UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SURDAK, | Case No. 5:22-cv-00921-SB-KK |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28] |
| DXC TECHNOLOGY et al., | |
| Defendants. | |

Plaintiff Christopher Surdak worked as a researcher for Defendant DXC Technology (DXC) for a little more than a year before DXC fired him. Plaintiff sued DXC in state court, challenging his termination and alleging that DXC improperly withheld Plaintiff's wages. DXC removed the case, Dkt. No. 1, and now moves for summary judgment on all claims, Dkt. No. 28. Plaintiff opposes and also requests summary judgment on his assertions that DXC "depriv[ed] Plaintiff of his earned wages" and is liable for a penalty under Cal. Lab. Code § 203. Dkt. No. 28-1 at 3. For the following reasons, the Court grants in part and denies in part DXC's motion and denies Plaintiff's request for partial summary judgment.

I.

Plaintiff was hired by DXC in May 2020. Dkt. No. 28-2 (Joint Appendix of Facts, JAF[1]) 1. He was terminated around July 16, 2021, and his last day at DXC

---

[1] To the extent the Court relies on evidence to which an evidentiary objection was raised, the Court overrules the objection, having found the contents of the evidence could be admitted at trial. *See, e.g.*, *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) ("If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the

was July 30, 2021. JAF 16, 18. Throughout Plaintiff's employment with DXC, his wages were garnished for child support and alimony in various amounts, pursuant to state court orders. JAF 19. Plaintiff contends that both his termination and DXC's failure to properly pay him arise from DXC's improper calculation of the garnishment amount and from his complaints about the same. The amount to be garnished changed several times, JAF 20, and most recently changed through a court order on May 6, 2021. JAF 22. Plaintiff provided a copy of the order to DXC's payroll department four days later. JAF 23. The order did not state the correct amount to be garnished. The correct amount was listed on an Amended Income Withholding Order (IWO), dated June 3, 2021, received by DXC on June 4. JAF 31, 33. June 4 was a payday, and the parties do not dispute that the directive could not be implemented for that day. JAF 34. The new garnishment amount was implemented the following payday, June 18.

From May 21 to June 15, Plaintiff corresponded with the payroll department about the court order. JAF 24. He asserted that his wages paid between the issuance of the court order and the implementation of the amount on the IWO, which encompassed two pay periods—May 21 and June 4, were over-garnished. JAF 36. While DXC denies that it was obligated to modify his garnishment before June 18, it later identified an administrative error during discovery in this lawsuit and paid Plaintiff $803.08 to reimburse him for child support that DXC "double garnished" on June 4. Dkt. No. 28-4 at 16 of 308 (stating DXC "recently discovered that due to a system error by ADP, Plaintiff was garnished twice for his child support obligation in the amount of $803.08 on June 4, 2021"). Plaintiff contends that his termination in July 2021 resulted from his complaints in May and June that he was not being paid all his wages. Dkt. No. 1-1 ¶ 42, JAF 41.

In Plaintiff's complaint, he identifies the issues with garnishment as the only basis for his termination. However, in his opposition to DXC's motion for summary judgment, he claims he was also terminated in retaliation for posting a tweet on his personal Twitter account and complaining that DXC's request that he remove the tweet constituted illegal censorship. Dkt. No. 28-1 at 17. In May 2021, Plaintiff's colleague filed an internal complaint about the tweet, posted by

---

author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment."). To the extent the Court does not rely on evidence objected to by the parties, the objections are overruled as moot.

Plaintiff, which stated, "I'll have those niggers voting Democrat for the next 200 years," and attributed the quote to Lyndon B. Johnson.  JAF 3.  The complaint led to an investigation, during which other allegedly offensive comments made by Plaintiff were discovered.  JAF 5.  Ira Katz, an Employee Relations Manager, spoke with Plaintiff about the tweet and asked Plaintiff to remove it, which Plaintiff did.  JAF 49, Dkt. No 28-3 at 92 of 144.  During Plaintiff's conversation with Katz, Plaintiff told Katz "he could not do his job if the company was going to censor him."  JAF 9.  The investigation into the tweet concluded, and Plaintiff was terminated in July.  JAF 18.  Plaintiff now asserts in his opposition that he was terminated for complaining about the alleged censorship and for "insisting upon his freedom from employer interference with his political activities."  Dkt. No. 28-1 at 21.

DXC's stated reason for terminating Surdak has changed over the course of this litigation.  Initially, in the parties' Joint Rule 26(f) Report, DXC stated that it "terminated Plaintiff for legitimate, non-retaliatory, and lawful reasons, including cost reduction and business reorganization."  Dkt. No. 13 at 4.  In its September 8 interrogatory responses, DXC stated the termination was "as a result of restructuring aimed at cost-saving measures."  Dkt. No. 28-5 at 15.  But on September 28, DXC amended those responses to state that the termination was because of Plaintiff's "poor judgment and apparent inability to understand how his statements both to coworkers *and on social media* could be misinterpreted and/or deemed offensive."  Dkt. No. 28-3 at 111 (emphasis added).

Plaintiff sued DXC in Superior Court in San Bernadino County, alleging that (1) DXC failed to pay him all wages earned, (2) DXC owed him a waiting time penalty for that failure, (3) he was terminated in violation of California's whistleblower retaliation law, and (4) he was terminated in violation of public policy.  Dkt. No. 1-1 (Complaint).  DXC removed the action based on diversity jurisdiction.  Dkt. No. 1.  DXC now seeks summary judgment on all of Plaintiff's claims, and Plaintiff seeks partial summary judgment as to liability on his first two claims.

II.

Summary judgment is appropriate where the record, viewed in the light most favorable to the opposing party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "The evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  The moving party has the initial burden of establishing that there are no disputed material facts. *Id.* at 256.  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed."  Fed. R. Civ. P. 56(e)(2).  Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court "may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).  Arguments based on conjecture or unfounded belief do not raise a genuine issue of material fact.  Moreover, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *R.W. Beck & Assocs. v. City of Sitka*, 27 F.3d 1475, 1481 n.4 (9th Cir. 1994) (citing *Anderson*, 477 U.S. at 249).

III.

A.

Plaintiff's first two causes of action allege failure to pay wages and waiting time penalties.  Employees are "entitled to the benefit of wage laws requiring an employer to promptly pay all wages due, and prohibiting the employer from deducting unauthorized expenses from the employee's wages . . . ."  *Davis v. Farmers Ins. Exch.*, 245 Cal. App. 4th 1302, 1330 (2016), *as modified on denial of reh'g* (Apr. 21, 2016).  To establish a claim for nonpayment of wages, Plaintiff must prove:  (1) that Plaintiff worked for DXC, (2) that DXC owed Plaintiff wages under the terms of the employment, and (3) the amount of unpaid wages.  CACI 2700.

It is undisputed that Plaintiff worked for DXC.  The facts related to the payment of wages also appear to be undisputed.  DXC has presented evidence that it has now paid Plaintiff all the wages to which he is entitled.  Plaintiff, on the other hand, contends that he was over-garnished on May 21 and June 4 by $1,189.16 and $1,445.54, JAF 36, but does not explain how so.  It is undisputed that the state court modified the amount to be garnished from Plaintiff on May 6,

2021. JAF 22. The order provides for $1,734 in monthly child support and $1,274 in monthly spousal support, and states that it is operative as of May 1, 2021. Dkt. No. 28-3 at 120 of 144. But DXC received an IWO on June 4, dated June 3, modifying the garnishment amount to $1,695.23 biweekly for both child and spousal support combined and ordering that the employer "must begin withholding no later than ___ days after the date of 2021-06-03" (with no number filled in the blank). Dkt. No. 28-4 at 4 of 308. The parties agree that the IWO contained the correct garnishment amount; and they also agree that the IWO could not be implemented for the June 4 payday. JAF 33–34. Plaintiff has not adequately explained how the May court order, which he admits stated an incorrect garnishment amount, could govern his paychecks on May 21 and June 4, or how he is entitled to the difference between the IWO amount and the amount he was garnished for pay periods that occurred before the IWO was received. At oral argument, the Court sought clarification and asked whether Plaintiff claims he is owed any wages after being repaid the double-garnished wages on June 4. Counsel for Plaintiff conceded that his client is not claiming he is owed any more wages.[2] Because no issues of fact exist and Plaintiff concedes he has been paid all wages, summary judgment in favor of DXC on Plaintiff's first cause of action is appropriate.

The same facts are implicated in Plaintiff's second cause of action, which alleges that DXC failed to timely pay earned wages to him upon termination, in violation of § 203 of the Labor Code. To recover penalties for the alleged failure to pay, Plaintiff must prove that his employment with DXC ended and that DXC *willfully* failed to pay him all wages when due. CACI 2704. It is undisputed that Plaintiff's last day of employment with DXC was July 30, 2021. JAF 18. Because Plaintiff concedes he was paid all wages except the underpayment for the double-garnished wages on June 4, only the double garnishment remains at issue in his second claim. Plaintiff argues that DXC's discovery of double garnishment and subsequent payment to him are evidence that it "willfully fail[ed] to pay . . . wages of an employee who is discharged" by garnishing his wages in the incorrect amount. Cal. Lab. Code § 203. Under California law, an employer's failure to pay is not willful if the failure is due to "(1) uncertainty in the law, (2) representation by taxing authority that no further payment was required, or (3) the employer's good faith mistaken belief that wages are not owed grounded in a good faith

---

[2] The Court asked Plaintiff's counsel: "Is your client claiming that he's owed any more wages, putting aside potential penalties?" Counsel responded, "I believe not, Your Honor."

dispute, which exists when the employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Boone v. Amazon.com Servs., LLC*, 562 F. Supp. 3d 1103, 1126 (E.D. Cal. 2022) (citing *Diaz v. Grill Concepts Servs., Inc.*, 23 Cal. App. 5th 859, 868 (2018)).

While DXC asserts that the double garnishment of wages was "due to a system error," Plaintiff has submitted evidence that calls into question DXC's conduct in failing to compensate him for the resulting underpayment. Plaintiff had complained about garnishment errors in May 2021 and filed suit over this complaint in April 2022. Yet DXC did not correct the asserted mistake, which it states was "an open and obvious error," until October 7, 2022. JAF 53–54. DXC does not explain why it took 17 months after Plaintiff complained—and six months after Plaintiff filed suit—to discover what was so plain. On this limited record, DXC has not established that its double garnishment of wages was not "willful" as a matter of law.

B.

1.

Plaintiff's remaining claims allege whistleblower retaliation and termination in violation of public policy. In his Complaint, Plaintiff bases both claims on his allegation that he was terminated for complaining that DXC over-garnished him, in violation of its obligation to pay him wages earned in a timely manner. In his summary judgment briefing, he raises the new argument that he was terminated for complaining that the company's direction to delete his tweet (which he contends was political) violated his rights to report allegedly unlawful activity. DXC argues that this second asserted basis for Plaintiff's claims—retaliation for Plaintiff's complaints about speech—is outside the bounds of Plaintiff's Complaint and thus should be disregarded by the Court. Before addressing the merits of Plaintiffs' arguments, the Court must determine whether to limit Plaintiff's claims to the theories alleged in the Complaint or to allow Plaintiff to amend his pleadings through his summary judgment arguments.

Generally, "[a] complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prod., Inc. v. Southwall Techs.*, Inc., 435 F.3d 989, 992 (9th Cir. 2006). The Ninth Circuit has held that when a plaintiff's

6

conduct fails to put a defendant on notice of new allegations it intends to raise in opposition to summary judgment, the new allegations can be disregarded. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) ("[T]he complaint gave the [defendants] no notice of the specific factual allegations presented for the first time in [plaintiff's] opposition to summary judgment."); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908–09 (9th Cir. 2011) ("The issue underlying *Pickern* . . . is whether the defendant had fair notice as required by Rule 8.").

However, the Ninth Circuit has also held that courts are to construe new theories raised on summary judgment as motions to amend the pleadings. *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014). In *Desertrain*, the plaintiffs challenged the constitutionality of a city ordinance on due process grounds. In its summary judgment motion, the plaintiffs asserted that the ordinance was void for vagueness, though they did not allege this theory in their complaint. The district court denied the motion on the grounds that the plaintiffs had not given proper notice of the vagueness claim. The Ninth Circuit held that the district court abused its discretion when it failed to construe the new claim raised on summary judgment as a motion to amend the pleadings under Rule 15(b). In concluding that amendment should have been allowed, the court emphasized that the plaintiffs had not learned of information relevant to the new claim until late in the discovery period and that the defendants were not prejudiced by the amendment because plaintiffs' counsel's questions during depositions "put [d]efendants on notice that [p]laintiffs were concerned with the vagueness of [the challenged ordinance]" and plaintiffs' counsel discussed their vagueness argument with defense counsel the day before the parties filed their summary judgment motions. *Id.* at 1154–55. Although *Desertrain* analyzed amendment under Rule 15, Rule 16 provides the relevant standard when, as here, the court's deadline for amendment has passed. *See Bickoff v. Wells Fargo Bank N.A.*, No. 14-1065-BEN, 2016 WL 3280439, at *16 (S.D. Cal. June 14, 2016) (treating inclusion of new issues raised in summary judgment as a motion to amend under *Desertrain* but evaluating whether to permit amendment under Rule 16 "because amendment would require a modification of the scheduling order"), *aff'd*, 705 F. App'x 616 (9th Cir. 2017).

Rule 16 provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The central inquiry under Fed. R. Civ. P. 16(b)(4) is whether the requesting party was diligent in seeking the amendment." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017). In the context of construing summary

judgment arguments as a request for leave to amend, courts applying *Desertrain* also consider whether the opposing party had adequate notice of the new claims. *See White v. Los Angeles Cnty. Sheriff's Dep't*, No. 19-4669-DSF, 2020 WL 5289848, at *5, n.10 (C.D. Cal. July 17, 2020) ("The Ninth Circuit has noted that 'summary judgment is not a procedural second chance to flesh out inadequate pleadings.' But the circuit has also permitted plaintiffs to 'incorporate . . . by amendment' . . . claims that were not properly raised in their pleadings, so long as plaintiff's pleadings provide sufficient notice of those allegations." (cleaned up)).

The scheduling order required Plaintiff to make any amendments to his complaint or set any motion requesting leave to amend for hearing by September 12. Dkt. No. 17 (Case Management Order). The Court finds that good cause exists to allow amendment of this deadline to consider Plaintiff's speech-related claims. It was not until September 28—after the deadline had passed—that Plaintiff first learned of the facts on which he now relies. As late as September 8, when DXC served its interrogatory responses on Plaintiff, Plaintiff was told that he was terminated "as a result of a workforce reduction. His position was no longer needed as a result of restructuring aimed at cost-saving measures." Dkt. No. 28-5 at 14–15 of 40. DXC amended its responses on September 28 to state that Plaintiff was terminated "due to his demonstrated poor judgment and apparent inability to understand how his statements both to coworkers and on social media could be misinterpreted and/or deemed offensive." Dkt. No. 28-3 at 110–11 of 308. DXC's late disclosure of its currently stated reasons for including Plaintiff in the workforce reduction prevented Plaintiff from pursuing his new theory until after the deadline for amendment had passed. In these circumstances, there is clearly good cause to allow the amendment. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" (quoting Rule 16's advisory committee's notes)).[3]

---

[3] While Plaintiff should have filed a separate motion to modify the deadline and amend his pleading before filing the summary judgment briefing, the Court does not find this fact dispositive here. The question of diligence is focused on a party's ability to avoid having to seek an extension of a deadline. *Johnson*, 975 F.2d at 609. It was not Plaintiff's lack of diligence that required the pretrial schedule to be modified; the modification was required because of DXC's delay in disclosing the true reasons for the termination until after the relevant deadline. Plaintiff's failure to move to amend presented a different concern: the possibility of prejudice

Not only was DXC responsible for the belated disclosure of the relevant information, it also was on notice before the close of discovery that Plaintiff would pivot his claims to unlawful retaliation and termination because of the tweet and DXC's actions in response to it.  After DXC's disclosure of those reasons for Plaintiff's termination, Plaintiff proceeded to engage in discovery clearly premised on the new facts and the new theory, asking deponents extensively about the tweet and the connection between the tweet and his termination.  *See, e.g.*, Dkt. No. 28-4 at Exhibit Q (Finch Deposition); Exhibit R (Khalid Deposition); Exhibit P (Reid Deposition); Exhibit O (Katz Deposition).  Accordingly, the Court finds that DXC was on notice that Plaintiff intended to argue that he was wrongfully terminated because of his complaints related to the tweet and subsequent investigation. *Compare Pesci v. McDonald*, No. 15-00607-SVW, 2015 WL 12672094, at *11 (C.D. Cal. Oct. 22, 2015) (finding interrogatory responses and deposition testimony sufficient to put defendant on notice of unpled allegations), *with Pickern*, 457 F.3d at 969 (holding expert report with new theory filed and served *after* the discovery deadline was insufficient to put defendant on notice).

On this record, the Court elects to exercise its broad discretion to modify the scheduling order and allow amendment of Plaintiff's claims to incorporate the arguments raised in his opposition to summary judgment.  The Court also finds that DXC had an adequate opportunity to respond to these arguments in its reply brief.  The Court will therefore consider the new issues raised in Plaintiff's opposition in evaluating this motion for summary judgment. *White*, 2020 WL 5289848, at *5, n.10.

2.

The Court now turns to the merits of each of the bases of Plaintiff's retaliation claims in Count 3, which are brought under Cal. Lab. Code § 1102.5. Section 1102.5 prohibits an employer from retaliating against an employee "for sharing information the employee 'has reasonable cause to believe . . . discloses a violation of state or federal statute' or of 'a local, state, or federal rule or regulation'" with (1) a government agency, (2) a person with authority over the employee, or (3) "another employee who has authority to investigate or correct the violation."  *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709

---

arising out of the belated notice of the new theory.  No such prejudice occurred because of the particular circumstances of this case.

(2022) (quoting Cal. Lab. Code § 1102.5(b)).  To establish a § 1102.5 claim, a plaintiff must demonstrate by a preponderance of the evidence "that retaliation for an employee's protected activities was a contributing factor in a contested employment action." *Id.* at 718.  The burden then shifts to the employer to demonstrate by clear and convincing evidence that "it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." *Id.*

It is undisputed that Plaintiff complained about garnishment only to the payroll department and his supervisor, David Reid, and that the decision to terminate Plaintiff's employment was made by Mary Finch and Ira Katz, neither of whom was part of the payroll department.  JAF 12, 28.  It is also undisputed that Reid was "not consulted about the decision to terminate" Plaintiff.  JAF 44.  Katz and Finch state in their declarations that they were unaware of Plaintiff's garnishment complaints, Dkt. No. 28-3 at 93 of 144, ¶ 8 (Katz), 107 of 144, ¶ 6 (Finch), and although Plaintiff disputes this assertion, he produces no contrary evidence—only speculation.[4]  Because Plaintiff has presented no evidence that anyone involved in the decision to fire him knew of his complaints about garnishment, his claim that those complaints were "a contributing factor" to his termination fails as a matter of law.

Plaintiff also contends that he engaged in protected activity when he complained that the company's request to delete his tweet amounted to censorship and that the company retaliated against him for that complaint.  DXC concedes that "Plaintiff's tweet was a significant factor in the decision to release him as was his apparent inability to understand that the language in the tweet could be offensive to anyone."  Def. Resp. to JAF 43.  For the reasons discussed in more depth below in connection with Count 4, a reasonable jury could conclude that Plaintiff's complaint about censorship was protected activity because Plaintiff reasonably believed DXC had violated California law by punishing him for his political views.  Because DXC admits that Plaintiff's tweet and his opinions about it expressed in his conversations with DXC were a "significant factor" in the decision to terminate him, the burden shifts to DXC to demonstrate that it would have terminated him

---

[4] *See, e.g.*, Plf. Resp. to JAF 30 (speculating that Finch and Katz might have known of his complaints because "all members" of the human resources department were aware of them); Dkt. No. 28-1 at 27 (speculating that Finch and Katz had been made aware by another human resources employee who was present during meetings about his termination).

for legitimate reasons. DXC argues that the tweet was not the exclusive reason Plaintiff was terminated, and that he was also terminated for "his repeated poor judgment" and his "failure to acknowledge that his conduct . . . [could be] offensive." Dkt. No. 28-1 at 24. But these additional concerns appear to implicate Plaintiff's arguably protected conduct—his complaints about DXC's response to his tweet. In any event, the circumstantial evidence, including the timing of Plaintiff's complaint and his termination, raises genuine issues of material fact as to whether DXC would have fired him for legitimate reasons even in the absence of his complaint about censorship. Accordingly, DXC is not entitled to summary judgment as to Plaintiff's claim in Count 3 alleging retaliation for his censorship complaint.

3.

Plaintiff's fourth cause of action alleges that he was terminated in violation of public policy. This claim requires Plaintiff to prove: (1) an employer-employee relationship; (2) that he was terminated; (3) that a substantial motivation for the termination violates public policy; and (4) that the termination caused him harm. *Garcia-Brower v. Premier Auto. Imports of CA, LLC*, 55 Cal. App. 5th 961, 973 (2020). To the extent this claim is premised on Plaintiff's complaints about wage garnishment, DXC is entitled to summary judgment because the uncontroverted evidence is that the decisionmakers who fired Plaintiff did not know about his garnishment complaints and, relatedly, because Plaintiff's garnishment-based claim in Count 3 fails. *Neufeld v. Winco Holdings, Inc.*, No. 14-1505-DAD, 2016 WL 815649, at *5 (E.D. Cal. Mar. 2, 2016) ("A common law claim for wrongful termination in violation of public policy cannot survive if it is entirely derivative of terminated statutory claims.").

However, Plaintiff also alleges that he was terminated in violation of Cal. Labor Code §§ 1101 and 1102. "Sections 1101 and 1102 of the California Labor Code prohibit employers from interfering with the fundamental right of employees in general to engage in political activity." *Couch v. Morgan Stanley & Co. Inc.*, 656 F. App'x 841, 842 (9th Cir. 2016) (internal quotation omitted). "Liability . . . is triggered only if an employer fires an employee based on a political motive." *Id.* A political motive might include "punishing him for expressing political views contrary to [the employer's] or, by discharging plaintiff, attempting to discourage other employees from expressing political views different from [the employer's]." *Nava v. Safeway Inc.*, No. F063775, 2013 WL 3961328, at *8 (Cal. Ct. App. July 31, 2013). Plaintiff has offered evidence that his tweet was politically motivated speech: it is undisputed that "[t]he only reason Surdak shared the tweet was to

educate people about Lyndon Johnson"—a political figure expressing a highly political, albeit a highly offensive, statement. JAF 6. Moreover, DXC concedes that it fired Plaintiff at least in part because of the tweet, and a reasonable jury could conclude that DXC disagreed with the political views expressed in or suggested by the tweet and wanted to punish Plaintiff for, or discourage other employees from, expressing similar speech. Because genuine issues of material fact exist as to whether Plaintiff was terminated for expressing his political beliefs, summary judgment on Count 4 is inappropriate. *See Nava*, 2013 WL 3961328, at *8 ("*If* plaintiff was fired for his particular political perspective, affiliation or cause . . . so that it may be inferred that (as plaintiff alleged) [the employer] was in effect declaring that the espousal or advocacy of such political views will not be tolerated—then [the employer's] action constituted a violation of Labor Code sections 1101 and 1102.").

\*\*\*

For the foregoing reasons, DXC's motion for summary judgment is GRANTED as to Plaintiff's claims in Count 1, in Count 2 to the extent the claims are based on willful over-garnishment on May 21 and June 4 not related to the admittedly double-garnished wages, and Counts 3 and 4 for whistleblower retaliation and termination in violation of public policy to the extent those claims are based on Plaintiff's complaints about wage garnishment, and those claims are dismissed on the merits with prejudice. Because genuine issues of material fact remain as to Plaintiff's claims in Counts 3 and 4 to the extent they are premised on Plaintiff's tweet and his complaints about the same, and as to Plaintiff's claims in Count 2 related to double garnishment, DXC's motion is otherwise DENIED, and Plaintiff's motion for partial summary judgment is DENIED.

Date: December 20, 2022

_____
Stanley Blumenfeld, Jr.
United States District Judge